RECEIVED
OCT 17 2022
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action

CLINTON BRINSON,
    Plaintiff,

C/A NO. 5:22-CV-00419-FL

V.

Falu Corporation d/b/a Falu Security
    Defendant,

To
Falu Corporation d/b/a Falu Security
1100 Peachtree St, Ne, Ste 200
Atlanta, GA 30309

I am filing this Complaint against Falu Corporation d/b/a Falu Security for violating my rights under Title VII of the Civil Rights of 1964 which prohibits employers from retaliating against an employee who has filed a charge with the EEOC. That on or about December 2020, I was hired by Defendant as a Security Guard. From the first paycheck to the last paycheck I received all of them were late like about two weeks late and I finally got frustrated with the late paychecks and informed Defendant through text that I was going to take this matter of my paychecks being late to the EEOC. The same day I text Captain Brodie ( who I knew then as Lt Brodie) my immediate supervisor that I was going to the EEOC about my paychecks being late she text me back that same day going at me about going to the EEOC about my paychecks being late and informing me I was terminated. See attached copy of text message to Captain Brodie (who I knew then as Lt. Brodie) and her response to me making my complaint to her about receiving my paychecks late and my intentions on going to the EEOC about it. The text messages clearly shows she was going at me for telling them I was going to the EEOC about my pay being late and she was upset and

informing me that I was terminated. Chief Knight tried to claim I was terminated because of my criminal background and couldn't recieve a Private Protection Services Board security license to be able to work as a Security Guard for Falu Corporation d/b/a Falu Security. However, I had already in a meeting with Chief Knight at his Durham office that he had sent to the Private Protection Services Board a application for me to be an armed security guard which he already knew I couldn't be because of my criminal record but he was supposed to have sent in an application to the Private Protection Services Board for me to be an unarmed security guard which is what I was hired for. Moreover, Paul Sherwin Director of the Private Protection Services Board had sent me an email which I informed Chief Knight I had that Paul Sherwin would allow me to get the Private Protection Services Board security license to work as an unarmed security guard if the Falu Corporation d/b/a Falu Security company would submit to the Private Protection Services Board an unarmed application. See attached copy of Paul Sherwin's email to me that he would allow me to get the Private Protection Services Board security license to work as an unarmed security guard if the Falu Corporation d/b/a Falu Security company would submit to the Private Protection Services Board an unarmed application. Chief Knight never submitted the unarmed application to the Private Protective Services Board for Paul Sherwing to approve me a license to work as a unarmed security guard for Falu Corporatiion d/b/a Falu Security but instead tried to use the denial of my security license for an armed security guard as a reason for the Defendant terminating me. This reason by Chief Knight clearly belies why I was terminated and does not support Defendant's defense denying my allegations. Moreover, the evidence discovered during the EEOC investigation also found Defendant failed to keep records in violation of 29 C.F.R. Section 1602.14 which requires the preservation of any personnel or employment record made or kept by an employer and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other term of compensation, and selection for training or apprenticeship, for the period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. See attached copy of EEOC DETERMINATION paragraph 4. The simple truth is Defendnat violated my

rights under Title VII of the Civil Rights Act 1964 retaliatory provision for making my complaint to them that I was going to the EEOC for my paychecks being late. See Burlington Northern & Santa Fe Railway Co. v White 548 U.S. 53, 2006. White filed suit in federal court, where a jury rejected her claims of sex discrimination but awarded her damages of $43,000 after finding that she had been retaliated against for her complaints, in violation of Title VII of the Civil Rights Act of 1964. The Supreme Court unanimously agreed that White suffered retaliatory discrimination when she was reassigned to less desirable duties and suspended without pay. Though the duties were within the same classificatiion and the pay was eventually reinstated, the actiion was nevertheless sufficiently harsh to constitute retaliatory discrimination. Also see Hubbell v FedEx SmartPost, Inc. No. 18-1727 (6th Cir 2019) Sheryl Hubbell worked for FedEx SmartPost, Inc. (FedEx) for about eight years until Fed Ex fired her in 2014. While employed Hubbell filed at least two EEOC charges alleging gender discrimination and retaliation for complaining about it. Hubbell later sued FedEx in court for terminating her employment in retaliation for filing those EEOC charges. Hubbell won her trial in district court, and a jury awarded 85,600 in front and back pay damages, $30,000 in non-economic damages, and $300,000 in punitive damages. Fedex appealed the decision arguing Hubbell's presented insufficient evidence to support her claim of retaliation. Title VII of the Civil Rights Act of 1964 prohibits employers from retaliating against an employee who has filed a charge with the EEOC. As part of their initial burden of making out a retaliation claim (called the prima facie case), a plaintiff must show that the employer's conduct was "materially adverse," which in this casse means that "it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlingon N. & Santa Fe Ry, Co. v. White, 548 U.S. 53, 68 (2006). FedEx argued that Hubbell did not satisfy the definition of "adverse employment action" under Title VII, which the company cited as conduct that "affect[s] the terms and conditions of employment." Notably however, Fedex cited the definition of adverse emloyment required of plaintiffs alleging discrimination not retaliation, under Title VII. A plaintiff suing under Title VII's anti-retaliation provision must demonstrate that the adverse employment action "might

well dissuade a reasonable worker from making or supporting a charge of discrimmination." The definition of adverse employment action under a Title VII retaliation claim is less demanding (and thus easier to meet for employees) than a claim of discrimination. The trial court had incorrectly held that the only materially adverse action in support of Hubbell's retaliation claim had to do with her not being able to clock in and out at the same time as her fellow employees. The Sixth Circuit rejected this analysis and found that, under the correct 'might well dissuade" standard for retaliation claims, evidence remained of other adverse employment actions taken in retaliation for filing the EEOC charge. This included evidence showing FedEx subjected Hubbell to increase supervision, specifically that her bathroom breaks were timed and tracked. Hubbell's supervisor also issued Hubbell written discipline, which she claimed was unjustified and violated company policy. Accordingly, the appellate court affirmed Hubbell's jury trial verdict on retaliation. Also see EEOC v, A.C. Widenhouse, Inc. No. 13-1389 (4th Cir. 2014) Gill and Robert Floyed, Jr., African-Americans, worked as truck drivers for A.C. Widenhouse. From as early as May 2007 through at least June 2008, Gill was repeatedly subjected to unwelcome derogatory raacial comments and slurs by the facility's general manager, (who was also his supervisor), the company's dispatcher, several mechanics and other truck drivers, all of whom are white. The comments and slurs included the "N" word, "monkey" and "boy." Gill testified that on one occasion he was approached by a co-worker with a noose and was told, "This is for you. Do you want to hang from the family tree?" Gill further testified that he was asked by white employees if he wanted to be the "coon" in their "coon hunt." Floyd testified that he also was subjected to repeated derogatory racial comments and slurs by the company's general manager and white employees. Floyd testified that when he was hired in 2005, he was the only African-American working at the company. According to Floyd, the company's general manager told Floyd that he was the company's "token black." Floyd testified that on another occasion the general manager told Floyd, "Don't find a noose with your name on it," and talked about having some of his "friends" visit Floyd in the middle of the night. Gill repeatedly complained about racial harassment to the company's dispatcher and general manager and Floyd complained to an owner of A.C.

Widenhouse but both men testified that the harassment continued. Gill intervened in the lawsuit and in addition to the EEOC's claim of racial harassment, Gill alleged that his employment with A.C. Widenhouse was terminated based on his race and in retaliation for complaining about racial harassment. A Winston-Salem jury of eight returned a unanimous verdict finding that Gill and Floyed, Jr., had been harassed because of their race, and that Gill had been fired because of his race and in retaliation for complainig about racial harassment. The district court ruled that the EEOC should recover $50,000 in compensatory damages on behalf of Floyd, and that Gill shoud recover $193,509 in compensatory and puntive damages, back pay, and pre-judged interest. The court further enjoined A.C. Widenhouse from discriminating against any person on the basis of race or in retaliation for opposing practices unlawful under Title VII of the Civil Rights Act of 1964. The three-year injunction also requires A.C. Widenhouse to implement a written anti-discrimination policy; conduct training on Title VII to all employees and to all owners involved in the company's operations; post the anti-discrimination policy and a notice to employees regarding the lawsuit; and provide the EEOC with periodic reports regarding complaints about racial harassment. Although the jury took less than an hour to reach its unanmous verdict, A.C. Widenhouse appealed to the Fourth Circuit, arguing that the trial court had committed errors in instructing the jury and in ruling on the admissibilty of evidence. The court of appeals firmly rejected these arguments, saying that the company's challenges to the EEOC's case were without merit and that the trial court had not abused its discretion in any way in its conduct of the trial. Although the jury was not instructed in accordance with subsequently announced Supreme Court standards on Gill's retaliation claim, the court of appeals said that A.C. Widenhouse had not demonstrated any prejudice from that error, and uplheld the verdict on that claim as well. In my case the circumstances are the same, on or about April 2, 2021 I engaged in protected activity by reporting to Defendant my intention of registering a complaint with the US Equal Employment Opportunity Commission that Defendant was paying me all of my paychecks late. See attached copy of text message to Captain Brodie (who I knew then as Lt. Brodie) and her response to me making my complaint to her about receiving my paychecks

late and my intention on going to the EEOC about it. The text messages clearly show she was going at me for telling them I was going to the EEOC about my pay being late and she was upset and informing me that I was terminated. The evidence therefore establishes an adverse employment action was taken against me that might well dissuade a reasonable worker from making or supporting a charge of discrimination. The texts also show that I was terminated on the same date after I engaged in the protected activity. The evidence therefore establishes a causal connection between my protected activity and the Defendant terminating me. See attached copy of text messages I text to Captain Brodie (who I knew then as Lt. Brodie) and her response to me making my complaint to her about receiviing my pay checks late and my intentions on going to the EEOC about it showing the time I text the message and the time she responded being the same day. Based on the evidence, there is reasonable cause to believe Defendant violated my rights under Title VII of the Civil Rights Act of 1964 retaliiatory provision retaliating against me for making my complaint to them that I was going to the EEOC about them giving me my paychecks late. Moreover, see attached copy of the EEOC's Determination on this matter finding that the evidence supports my retaliatory discharge allegation and does not support Respondent's defenses.

Relief seek. For viiolation of my rights under Title VII of the Civil Rights Act of 1964 anti-retaliation provision Judges and courts have long, long ruled that big businesses such as Falu Corporation d/b/a Falu Security cannot violate an employee's rights under this provision. Burlington Northern & Santa Fe Railway Co. v. White 548 U.S. 53, 2006 White filed suit in federal court, where a jury rejected her claims of sex discrimination but awarded her damages of $43,000 after finding that she had been retaliated against for her complaints in violation of Title VII of the Civil Rights Act of 1964. The Supreme Court unanimously agreed that White suffered retaliatory discrimination when she was reassigned to less desirable duties and suspended without pay. Though the duties were within the same classification and the pay was eventually reinstated, the action was nevertheless sufficiently harsh to constitute retaliatory discriminatiion. EEOC v. A.C. Widenhouse, Inc. No. 13-1389 (4th Cir. 2014) A

Winston-Salem jury of eight returned a unanimous verdict finding tha Gill and Floyd Jr., had been harassed because of their race, and that Gill had been fired because of his race and in retaliation for complaining about racial harassment. The district court ruled that the EEOC should recover $50,000 in cmpensatory damages on behalf of Floyd, and that Gill should recover $193,509 in compensatory and punitive damages, back pay, and pre-judged interest. The court further enjoined A.C. Widenhouse fron discriminating against any person on the basis of race or in retaliation fo opposing practices unlawful under Title VII of the Civil Rights Act of 1964. EEOC v USAble Life U.S. District Court for the Eastern District of Arkansas Western Division, Civil Action No. 4:19-cv-00846 USAble Life to pay $90,000 to settle EEOC Retaliation Discrimination suit, the employee complained about pregnancy and disability discrimination to both Blue Cross Blue Shield and USAble Life. USAble Life terminated the employee on April 11, 2018, because of how the employee handled her discrimination complaints.The Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (ADA) protect employees who engage in protected activity, such as complaints about discrimination, from retaliation. Hubbell v FedEx SmartPost, Inc 18-1727 (6th Cir, 2019) Sheryl Hubbell worked for FedEx Smart Post, Inc (FedEx) for about eight years until Fed Ex fired her in 2014. While employed Hubbell filed at least two EEOC charges alleging gender discrimination and retaliation for complaining about it. Hubbell later sued FedEx in court for terminating her employment in retaliation for filing those EEOC charges. Hubbell won her trial in district court, and a jury awarded $85,600 in front and back pay damages, $30,000 in non-economic damages, and $300,000 in punitive damages. Still, in the face of all these different court decisions even a Supreme Court decision big companies such as Falu Corporation d/b/a Falu Security is still willing to violate a person's rights under the Title VII of the Civil Rights Act of 1964, the amount of money these big companies have to pay for this violation is simply not enough. Here, with Falu Corporation d/b/a Falu Security this fact is proven to be so true. Falu Corporation d/b/a makes around and about 5.4million dollars a year todays penalties of the hundred thousands is just not enough for him. Not only did Falu Corporation violate my rights under Title VII retaliation provison but he also at this same time violated my rights

under the FLSA not paying me my pay checks on time. Nor when the EEOC made it's determinatiion that Falu Corporation d/b/a Falu Security had in fact violated my rights under Title VII's retaliation provision did Falu Corporation d/b/a Falu Security bother to show up for concilliation on this matter. Doesn't seem like Falu Corporatiion d/b/a Falu Security is worried about the amount of money these big companies such as Falu Corporation d/b/a Falu Security have to pay for viiolation of my rights under Title VII's retaliation provision. Add that to the fact that the evidence show that Falu Corporation d/b/a Falu Security willfully and intentionally violated my rights under Title VII's retaliation provision it only solidifies that Falu Corporation d/b/a Falu Security is not worried about the amount of mmoney these big companies such as Falu Corporatiion d/b/a Falu Security has to pay for violating my Rights under Title VII's retaliation provision. The only way for Judges and the courts to demand compliance from these big companies such as Falu Corporation d/b/a Falu Security is to make the penalties for violating an employee's rights under the Title VII of the Civil Rights Act of 1964 even higher. After making my complaint to Falu Corporatiion d/b/a Falu Security that I was going to the EEOC about my pay being late Captain Brodie (who I knew then as Lt. Brodie) text me back going at me for telling them I was going to the EEOC about my pay being late she was upset and informing me that I was terminated. Chief Knight tried to use a pretext reason as to why I was terminated that the PPSB security license place had denied my security license to belie that I was terminated because I was going to the EEOC about my pay being late.The humiliation and anxiety of not having a job and trying to find another job to meet my bills and eat leaving me with a feeling of depression relief seek seek five point four million dollars in collateral damages that's what he makes in one year maybe a year of what he makes could finally demand that he comply with the Judges and Courts not to violate a person's right under the Title VII of the Civil Rights Act of 1964. And because the violation was willful and intentional five point four million dollars in punitive damages.

Clinton Brinson
*Clinton Brinson*